**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| DANIEL MCRITCHIE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GLOBAL TETRAHEDRON LLC,<br><br>Defendant. | Case No. 1:25-cv-05471<br><br>Hon. Matthew F. Kennelly |

**MEMORANDUM IN SUPPORT OF DEFENDANT GLOBAL TETRAHEDRON LLC'S**
**MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(1) AND 12(B)(6)**

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........................................................................................- 1 -

II. BACKGROUND ........................................................................................- 2 -

II. ARGUMENT..............................................................................................- 5 -

A. The Complaint Should Be Dismissed Under Fed. R. Civ. P. 12(b)(1) for Lack of Standing. ........................................................................- 5 -

B. The Complaint Should Be Dismissed Under Fed. R. Civ. P. 12(b)(6) for Failure to State a Claim. ........................................................................- 9 -

C. In the Alternative, Plaintiff Must Provide a More Definite Statement Under Fed. R. Civ. P. 12(e). ........................................................- 13 -

III. CONCLUSION ........................................................................................- 15 -

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Anderson v. Cornejo*,
No. 97 C 7556, 1999 WL 35307 (N.D. Ill. Jan. 11, 1999) ....................15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................5

*Barclift v. Keystone Credit Servs. LLC*,
93 F.4th 136 (3d Cir. 2024) ....................8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................10

*Benjamin v. Costco Wholesale Corp.*,
No. 2:24-cv-7399, 2025 WL 1195925 (E.D.N.Y. Apr. 24, 2025)....................9

*Boucher v. Fin. Sys. of Green Bay, Inc.*,
880 F.3d 362 (7th Cir. 2018) ....................10

*Burdette v. FuboTV Inc.*,
No. 23 C 10351, 2024 WL 2831466 (N.D. Ill. June 4, 2024) ....................13

*Convenient Indus. of Am., Inc. v. CFM Franchising Co.*,
No. 93 C 4028, 1993 WL 387363 (N.D. Ill. Sept. 24, 1993)....................14

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ....................10

*Fischer Indus. Inc. v. Medivance Instruments, Ltd.*,
No. 89 C 9082, 1992 WL 686866 (N.D. Ill. Aug. 31, 1992)....................15

*Haynes v. Baldwin*,
No. 3:20-CV-0086-GCS, 2020 WL 4582584 (S.D. Ill. Aug. 10, 2020)....................14

*Herrera v. Rector*,
No. 03 CV 6377, 2004 WL 2047562 (N.D. Ill. Sep. 13, 2004)....................14

*Hughes v. Nat'l Football League*,
No. 24-2656, 2025 WL 1720295 (2d Cir. June 20, 2025)....................2, 7, 10, 11, 12, 15

*Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*,
48 F.4th 1236 (11th Cir. 2022) (en banc) ....................8

*Lax v. Mayorkas*,
20 F.4th 1178 (7th Cir. 2021) ....................10

*Manza v. Pesi, Inc.*,
No. 24-cv-690-jdp, 2025 WL 1445762 (W.D. Wis. May 20, 2025) ....................13

*McLeod v. Arrow Marine Transp., Inc.*,
258 F.3d 608 (7th Cir. 2001) ....................6

*Nabozny v. Optio Sols. LLC*,
84 F.4th 731 (7th Cir. 2023) ....................1, 2, 6, 7, 8, 9

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016)....................10, 12, 13

*Nixon v. Pond5, Inc.*,
No. 1:24-CV-05823 (JLR), 2025 WL 2030303 (S.D.N.Y. July 21, 2025)....................11

*Shields v. Prof'l Bureau of Collections of Maryland, Inc.*,
55 F.4th 823 (10th Cir. 2022) ....................8

*Silha v. ACT, Inc.*,
807 F.3d 169 (7th Cir. 2015) ....................5

*Solomon v. Flipps Media, Inc.*,
136 F.4th 41 (2d Cir. 2025) ....................2, 7, 9, 10, 11, 12, 13, 15

*Sterk v. Redbox Automated Retail, LLC*,
No. 11 C 1729, 2012 WL 3006674 (N.D. Ill. July 23, 2012) ....................9

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)....................1, 5, 6, 7, 8, 9

*Yershov v. Gannett Satellite Info. Network, Inc.*,
820 F.3d 482 (1st Cir. 2016)....................12

**Statutes and Rules**

18 U.S.C. § 2710....................1

18 U.S.C. § 2710(a)(3)....................10

18 U.S.C. § 2710(b)(1) ....................10

Fed. R. Civ. P. 12(b)(1)....................5

Fed. R. Civ. P. 12(b)(6)....................9

Fed. R. Civ. P. 12(e) ....................14

**Other Authorities**

Lokker, Website Privacy and Compliance Challenges (March 2024), *available at* https://lokker.com/wp-content/uploads/2024/04/LOKKER_Online-Data-Privacy-Report_032024-2.pdf ........................................................................................1

Rest. 2d. Torts § 652D (Am. Law Inst. 1977) ........................................................................7

Rest. 2d Torts § 652D cmt. a ................................................................................................7, 8

## I. INTRODUCTION

Plaintiff's case is part of a wave of lawsuits challenging websites' use of the "Meta Pixel," which allegedly sends information to Meta (Facebook) about website visitors for advertising purposes, when video content appears on the websites. Plaintiff alleges that *The Onion*, a satirical newspaper with a free email newsletter, uses the Meta Pixel on its website, as do about half of all websites.[1] Pairing that with allegations that Plaintiff subscribes to *The Onion*'s newsletter, and that he watched videos on *The Onion*'s website, Plaintiff asserts a claim under the Video Privacy Protection Act, 18 U.S.C. § 2710. He seeks to represent a class of subscribers to *The Onion* newsletter who watched videos on the website (and who also have a Facebook account), and to recover statutory damages of $2,500.

While courts have greeted this wave of VPPA lawsuits ambivalently, controlling Seventh Circuit law and a growing trend against these cases forecloses Plaintiff's claim for two reasons.

First, Plaintiff lacks standing under Article III because he cannot allege any concrete injury. The few decisions to have found standing to pursue a VPPA claim within the Seventh Circuit do not survive the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021), and the Seventh Circuit's decision in *Nabozny v. Optio Solutions LLC*, 84 F.4th 731, 734 (7th Cir. 2023). Under those decisions, a plaintiff cannot state a statutory claim based on a business-to-business transfer of information, as alleged here. As *Nabozny* held, such a transfer is not analogous to "the tort of publicity given to another person's private life, or as some sources phrase it the *public disclosure of private facts*," as required after the Supreme Court's decision in

[1] *See* Lokker, Website Privacy and Compliance Challenges (March 2024), *available at* https://lokker.com/wp-content/uploads/2024/04/LOKKER_Online-Data-Privacy-Report_032024-2.pdf (47% of websites have the Meta Pixel (55% of S&P 500, 58% of retail, 42% of financial services, 33% of healthcare, and 42% of technology companies)). We offer this cite merely as context for Plaintiffs' claim; it is not necessary for the Court to decide the motion.

*TransUnion*. 84 F.4th at 735 (emphasis added).

Second, courts are beginning to "shut the door for Pixel-based VPPA claims." *Hughes v. Nat'l Football League*, No. 24-2656, 2025 WL 1720295, at *2 (2d Cir. June 20, 2025) (summary order); *accord Solomon v. Flipps Media, Inc.*, 136 F.4th 41, 52 (2d Cir. 2025). Under the prevailing "ordinary person" standard for assessing the VPPA's prohibition on sharing personally identifiable information, sharing information via the Meta Pixel neither identifies video information nor a particular individual in violation of the VPPA.

Finally, if the Court decides not to dismiss Plaintiff's claim outright, as it should, the Court should require Plaintiff to amend the Complaint to allege the email address with which he allegedly subscribed to *The Onion*'s newsletter, when he subscribed, and when he watched videos on *The Onion*'s website, so that Global Tetrahedron can respond. This basic information is necessary, because: (1) Plaintiff's email address may show that he is not even a subscriber to *The Onion*'s newsletter, or that he agreed to arbitrate any claim concerning his subscription, and (2) when he allegedly subscribed and watched videos bears on whether Global Tetrahedron is the proper defendant at all, as Global Tetrahedron only acquired *The Onion* in 2024.

## II. <u>BACKGROUND</u>

*The Onion* is a satirical newspaper that Global Tetrahedron owns as of April 2024. ECF 1 ¶ 2; *see* RJN Ex. 1. *The Onion* offers a free email newsletter for readers "looking to have a good laugh." *Id.* Plaintiff is a New York resident, who alleges that he subscribed to the newsletter "sometime in or around 2024." *Id.* ¶ 6. Plaintiff alleges that he used *The Onion*'s website to watch pre-recorded videos "on various occasions." *Id.* Plaintiff does not say when he subscribed to the newsletter, or when he watched any videos. *Id.*

Plaintiff alleges that *The Onion*'s website contains a "tracking pixel" that automatically

shares a website visitor's browsing history with Facebook's parent company, Meta, if visitors are logged into their Facebook accounts on the same browser. *Id.* ¶¶ 3, 21, 27. According to Plaintiff, this "Meta Pixel" sends Meta the website visitor's URL (the address of the webpage) and Facebook ID (a series of numbers for each Facebook user). *Id.* ¶¶ 27, 29. While Plaintiff alleges that Meta uses this data for targeted advertising, *id.* ¶ 37, he does not allege that any person at Meta or elsewhere viewed the data. *See* ECF 1.

Indeed, Plaintiff does not even allege that any of *his* data, in particular, was sent to Meta, or that he incurred any harm based on any transmission. *See id*. Instead, he provides an exemplar screenshot containing lines of unintelligible characters. *Id.* ¶ 31, Figure 4. Plaintiff alleges that the screenshot shows that the Meta Pixel sent Meta the title of a video an anonymous visitor allegedly viewed (within a URL included in "path" code) and the visitor's Facebook ID (within "c_user" cookie code).[2] *Id.* ¶¶ 31, 36, 39. None of that is discernable from the screenshot in the Complaint:

[2] The Complaint also alleges that the Meta Pixel sends Meta a visitor's Facebook ID and browser identifier through a "fr cookie," but offers no allegations about that data, or how anyone could access or view the data. ECF 1 ¶¶ 36, 39.




*Id.* ¶ 31, Figure 4.

Recognizing that a typical person could not figure out whether the website sent data to Meta, what data was sent, or what the data means, the Complaint's anonymous visitor asked ChatGPT. *Id.* ¶ 32. ChatGPT instructed the visitor to:

- determine whether the website sent data to Meta by using the browser's "Developer Tools," which could be accessed by visiting the website, selecting "Inspect," navigating to the "Network" tab, reloading the webpage, and searching the network data;
- determine what the lines of code represent by uploading the screenshot to ChatGPT; and
- determine "whose Facebook profile that 'c_user' thing is pointing to" by entering the "c_user" number embedded within the lines of code into a Facebook URL.

*Id.* ¶¶ 32–33, Figures 5–8.

Contrary to Plaintiff's conclusion that, by doing so, the "Facebook ID allows anybody … to identify the individual *The Onion* subscriber with a Facebook account," *id.* ¶ 30, ChatGPT responded, "*Facebook does not publicly expose a simple way to look up a profile by that ID*." *Id.* ¶ 33, Figure 8 (emphasis added). Following ChatGPT's instructions for how to locate the Facebook profile associated with the Facebook ID alleged in the Complaint ("100000984007553"), *id.*,

returns the message, "*This content isn't available right now*." RJN at Ex. 2 (emphasis added).

Notwithstanding these factual allegations, Plaintiff concludes that the Meta Pixel's cookies include "[PII] because [they] contain[] a consumer's unencrypted Facebook ID." ECF 1 ¶¶ 30, 36. Plaintiff also concludes that the Meta Pixel "knowingly discloses information sufficiently permitting an ordinary person to identify a specific individual's video viewing behavior" without "any unforeseen detective work," *id.* ¶¶ 34, 41—despite having spent pages alleging significant detective work that did not, in fact, identify an individual's video views, *id.* ¶¶ 28–33.

Nevertheless, based on his unsubstantiated conclusions that the Meta Pixel permits someone to see an individual's video history, Plaintiff asserts a single claim for violation of the VPPA. *Id.* ¶¶ 50–59.

## II. <u>ARGUMENT</u>

### A. The Complaint Should Be Dismissed Under Fed. R. Civ. P. 12(b)(1) for Lack of Standing.

A court must dismiss a complaint under Rule 12(b)(1) if a plaintiff does not satisfy Article III standing. *Silha v. ACT, Inc*., 807 F.3d 169, 172, 175 (7th Cir. 2015).

Plaintiff bears the burden of establishing standing. *Id*. On review, a "court should use *Twombly-Iqbal*'s 'plausibility' requirement," in which a court "(1) first identifies the well-pleaded factual allegations by discarding the pleadings that are 'no more than conclusions' and (2) then determines whether the remaining well-pleaded factual allegations 'plausibly give rise to an entitlement of relief.'" *Id.* at 174 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

Through that prism, "to establish standing, a plaintiff must show [] that he suffered an injury in fact that is concrete, particularized, and actual or imminent." *TransUnion*, 594 U.S. at 423. For statutory claims, there is no Article III standing absent "plaintiff's suffering [of] concrete harm" as a result of "defendant's violation of" the statute. *Id.* at 426–27. In other words, "an injury

in law is not an injury in fact." *Id.* at 427. Thus, even where Congress created a statutory cause of action, a court still maintains a "responsibility to independently decide whether a plaintiff has suffered a concrete harm." *Id.* at 426; *see Nabozny*, 84 F.4th at 734 (quoting same).

Concrete injuries most obviously include "[t]angible harms" like "physical harms and monetary harms," but also include "injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id*. at 425. The question then is whether Plaintiff alleges that he was concretely injured in a manner traditionally recognized as sufficient to sue. He does not.

First, Plaintiff does not allege that any of *his* data was transmitted to Facebook upon visiting *The Onion*'s website, let alone while he was a subscriber to *The Onion*'s newsletter. *See* ECF 1. The Complaint includes screenshots purporting to show that the Meta Pixel transmitted information concerning an anonymous visitor—not Plaintiff.[3] This is fatal. *See TransUnion*, 594 U.S. at 423, 428–29 (an "uninjured plaintiff" may not seek general legal compliance).

The unidentified visitor's interactions with the website do not remedy this omission, because they do not aver anything as to Plaintiff. For example, the Complaint does not allege that the Meta Pixel was installed on the website whenever Plaintiff watched videos on the website. *See* ECF 1. And even if it did, there are many reasons why Plaintiff's data may not have been sent to Meta (*e.g.*, cookie blockers, Meta preferences, cookie opt-outs, etc.). The Court cannot infer, then, that any of Plaintiff's data was sent to Meta. *See McLeod v. Arrow Marine Transp., Inc.*, 258 F.3d 608, 614 (7th Cir. 2001) (on a motion to dismiss, the court is "not obliged to accept as true conclusory statements of law or unsupported conclusions of fact").

[3] The same alleged Facebook ID in the Complaint (100000984007553, *see* ECF 1 ¶ 31, Figure 4) appears in a similar complaint filed in the Eastern District of New York, by different plaintiffs, *Itzhak et al. v. Kiss Nail Prods., Inc.*, No. 24-cv-04460 (E.D.N.Y.), ECF 1 ¶ 46.

But even if Plaintiff alleged that his data was sent to Meta, he still does not allege any injury "with a close relationship to harms traditionally recognized as providing a basis for lawsuits," as required. *TransUnion*, 594 U.S. at 425. At most, Plaintiff alleges the disclosure of non-private information from one business (Global Tetrahedron) to another (Meta). That fails twice over, because it is neither private information nor disclosed to the public.

As the Seventh Circuit has recognized, an alleged disclosure of personal information must be analogous to "the tort of publicity given to another person's private life, or as some sources phrase it, the *public disclosure of private facts*." *Nabozny*, 84 F.4th at 735 (emphasis added). A person commits that tort "if he 'gives publicity' to a matter that concerns 'the private life of another,' is 'highly offensive to a reasonable person,' and is not of legitimate public concern." *Id.* (quoting Rest. 2d. Torts § 652D (Am. Law Inst. 1977)). In other words, the tort requires (1) a disclosure of private information about the plaintiff, (2) that "is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.'" *Id.* (quoting Rest. 2d Torts § 652D cmt. a).

Here, Plaintiff does not allege a disclosure of his private information. *Infra* at II.B. Rather, Plaintiff's allegations about strings of characters, numbers, and letters allegedly transmitted to Meta do not disclose any private information about Plaintiff. To the contrary, even if someone could find the lines of code hidden within the "Developer Tools," it "is implausible that an ordinary person would look at the "characters, numbers, and letters" and "understand it to [contain] a video title," understand a "portion to be a video title as opposed to any of the other combinations of words within the code," or "conclude that the phrase was a person's [Facebook ID]." *Solomon*, 136 F.4th at 54; *Hughes*, 2025 WL 1720295, at *2–3. And even if someone managed to do so, they would not then be able to identify Plaintiff based on the Facebook ID, as alleged. *Infra* at II.B.

Nor does Plaintiff allege any public disclosure, as required. To the contrary, the Complaint alleges that the data is disclosed only to Meta. ECF 1 ¶¶ 26–42. That does not suffice. The Seventh Circuit has held that a disclosure of private information from one business to another is not a "public" one. *Nabozny*, 84 F.4th at 736 (the "communication must 'reach, or be sure to reach, the public,'" not just "a small group of persons" (quoting Rest. 2d Torts § 652D cmt. a) (cleaned up)). Because the common law did not recognize non-public, business-to-business disclosures as harmful, courts may not recognize as much under Article III. *Id.* at 733.

This case is on all fours with *Nabozny*. There, the plaintiff alleged a Fair Debt Collection Practices Act violation based on allegations that a debt collector "disclosed pieces of her private debt information" to another business, a third-party mail vendor. *Id.* at 735. The Seventh Circuit held that the plaintiff did not suffer a concrete harm sufficient to confer standing because such a business-to-business disclosure was not akin to the tort of public disclosure. *Id.* at 738 (affirming dismissal for lack of standing under *TransUnion*). So too here: Plaintiff alleges no more than a private business-to-business disclosure, which is not a "concrete harm."

Other circuits agree that consumers are not concretely harmed when their information is privately disclosed between two businesses. *See, e.g.*, *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1250 (11th Cir. 2022) (en banc) (affirming dismissal for lack of standing under *TransUnion*, where a consumer alleged a debt collection agency disclosed his debts to a mail processing vendor in violation of the FDCPA); *see also Shields v. Prof'l Bureau of Collections of Maryland, Inc.*, 55 F.4th 823, 829 (10th Cir. 2022); *Barclift v. Keystone Credit Servs. LLC*, 93 F.4th 136, 144–45 (3d Cir. 2024) (same).

To be sure, some courts found standing to assert a claim for violation of the VPPA, *see, e.g.*, *Sterk v. Redbox Automated Retail, LLC*, No. 11 C 1729, 2012 WL 3006674, at *8 (N.D. Ill.

July 23, 2012), but those cases no longer represent the law governing standing. All of the cases came before the Supreme Court decided *TransUnion*, which the Seventh Circuit interpreted in *Nabozny* to mean that concreteness requires a close analog to traditional tort harms, and business-to-business transfers of information are not analogous to the tort of publicity.

Even if this Court departed from Seventh Circuit precedent, moreover, any disclosure of information to Meta also does not plead a concrete harm because, under Plaintiff's own theory, nobody at Meta has seen the information. As we explain below, Plaintiff's use of ChatGPT does not help Plaintiff allege plausible facts. *See, e.g.*, *Benjamin v. Costco Wholesale Corp.*, No. 2:24-cv-7399, 2025 WL 1195925, at *1 (E.D.N.Y. Apr. 24, 2025) (AI tools "can 'hallucinate'—that is, they produce blatantly incorrect information that, on its face, appears truthful"). But because Plaintiff's Complaint relies upon ChatGPT's output, he cannot object to consideration of ChatGPT's statement that no Meta employees "read or view individual Pixel transmissions." RJN Ex. 3. Thus, as alleged, the Meta Pixel does not disclose information to *anyone*, let alone the public. This too sinks Plaintiff's claim. *See Nabozny*, 84 F.4th at 736 (finding no concrete harm where "[n]othing in the complaint suggests any manner of public disclosure *or even that anyone at [the third party] read or appreciated her information*" (emphasis added)).[4]

### B. The Complaint Should Be Dismissed Under Fed. R. Civ. P. 12(b)(6) for Failure to State a Claim.

To survive a Rule 12(b)(6) motion to dismiss, Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d

[4] Plaintiff cannot allege that anyone outside of Meta can view the data. ECF 1; *see Solomon*, 136 F.4th at 45 ("only Facebook's servers can access" the cookie associated with a Facebook ID). And Plaintiff's allegations that Meta uses the data for targeted advertising, ECF 1 ¶ 37, also do not plead a "public disclosure." The Complaint does not allege that any ads, or even datasets shared with advertisers, plausibly disclose Plaintiff's private information. *See* ECF 1.

362, 365–66 (7th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While courts accept all well-pleaded factual allegations in the complaint, naked assertions, devoid of further factual enhancement, are insufficient, as are legal conclusions or conclusory allegations. *Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021).

To state a claim under the VPPA, "a plaintiff must plausibly allege that (1) a video tape service provider (2) knowingly disclosed to any person (3) [PII] concerning her use of the service." *Solomon*, 136 F.4th at 44 (citing 18 U.S.C. § 2710(b)(1)).

Plaintiff's claim should be dismissed because he does not allege that Global Tetrahedron disclosed any PII. 18 U.S.C. § 2710(b)(1). PII means "information which identifies a person as having requested or obtained specific video materials or services from a video service provider." 18 U.S.C. § 2710(a)(3). "The VPPA's prohibition on the disclosure of [PII] applies only to the kind of information that would readily permit an *ordinary person* to identify a specific individual's video-watching behavior." *Solomon*, 136 F.4th at 49 (quoting *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 267 (3d Cir. 2016)) (emphasis added) (cleaned up); *see also Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (same). PII does not include "information that only a sophisticated technology company could use to do so." *Id*. at 52.

A plaintiff does not allege a disclosure of PII under the VPPA when he alleges that the Meta Pixel discloses his URL and Facebook ID to Meta. *Id.* at 54; *Hughes*, 2025 WL 1720295, at *3. That is because, "even assuming, *arguendo*, that an ordinary person could somehow gain access" the long lines of code, an ordinary person could not understand (1) that the URL includes a "video title as opposed to any of the other combinations of words within the code," (2) that the "c_user" code includes a visitor's Facebook ID, or (3) how to identify the visitor with a Facebook ID, which would "be of little help in trying to identify an actual person." *Id*. at 54–55 (affirming

dismissal of VPPA claim for failure to allege PII was disclosed through the Meta Pixel); *see also Hughes*, 2025 WL 1720295, at *3 (same with prejudice); *see also Nixon v. Pond5, Inc.*, No. 1:24-CV-05823 (JLR), 2025 WL 2030303 (S.D.N.Y. July 21, 2025) (dismissing same with prejudice).

*Solomon* forecloses Plaintiff's claims here. Like Plaintiff here, the plaintiff there provided an "exemplar screenshot" that depicted lines of code. *Id.* at 46, 54. And like here, the plaintiff alleged that embedded within the code were: a video title (within a URL included in "GET" request code) and Facebook ID (within "c_user" cookie code). *Id.* Assessing these nearly identical facts, the Second Circuit held that the code did not plausibly allege a disclosure of PII, because no ordinary person could discern that the video title and Facebook ID were included in the code, let alone connect them to the plaintiff. *Id.*

The Second Circuit reaffirmed that holding in *Hughes*. 2025 WL 1720295, at *3. There too the plaintiff included a "screenshot depicting a 'single communication session sent from [a] device to Facebook' via the Pixel," which he alleged disclosed a video title (within a URL included in "path" code) and Facebook ID (within a "c_user" cookie code). *Id.* at *2–3. And there too the Second Circuit held that the code did not disclose PII under the VPPA. *Id.* To the contrary, "*Solomon* effectively shut the door for Pixel-based VPPA claims." *Id.* at *2.

Plaintiff's exemplar screenshot is no different here. Even if an ordinary person knew how to find the data in the first place via their browser's "Developer Tools," they could not:

- look at the "path" characters—such as "/tr/?id=1037357317998806&ev=" and "2.9.196&r=stable&ec=0&o=12318&fbp=," ECF 1 ¶ 31, Figure 4—and "understand it to be a video title … as opposed to any other combinations of words";

- look at the "c_user" characters—such as "100000984003:xs=5%3Ajw9Aj20sRgf …," ECF 1 ¶ 31, Figure 4—and understand it to include a Facebook ID; or

- use the Facebook ID—"100000984003," ECF 1 ¶ 31, Figure 4—to identify the individual.

*Solomon*, 136 F.4th at 54. That alone is not dispositive. *Id.* But beyond that, following ChatGPT's

instructions does not reveal individual's identity or anyone; only a webpage stating: "*This content is not available*." RJN Ex. 2 (emphasis added). That does not any individual.

Plaintiff's use of ChatGPT, ECF 1 ¶ 32–34, does not help him. The Second Circuit already rejected that pleading tactic. *Hughes*, 2025 WL 1720295, at *3 (rejecting that "an ordinary person could plug the code into '… ChatGPT' to 'translate the code to reveal the Facebook ID and video title in plain English'"). Plaintiff's allegations reveal why this does not work. The Complaint demonstrates that—even with AI—an ordinary person could not "identify [Plaintiff's] video-watching habits" "with little or no extra effort." *Solomon*, 136 F.4th at 54 (quoting *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d at 284). Quite the opposite: with extra effort and the help of AI, an ordinary person still cannot discern an individual visitor's viewing habits. ECF 1 ¶¶ 32–33.

This Court should follow *Solomon* and *Hughes*, and the weight of authority adopting the ordinary person standard for assessing PII. While the Seventh Circuit has not yet addressed the standard for a PII under the VPPA, the ordinary person standard reflects the majority view (adopted by the Second, Third, and Ninth Circuits), and it is correct. These Circuits properly reviewed the VPPA's text, structure, and history to conclude that PII covers only information that would allow an ordinary person to identify a visitor's viewing habits. Although the First Circuit adopted an outlier reasonable foreseeability standard,[5] that standard is at odds with the VPPA's text and purpose. The VPPA was intended to protect individuals from having their video history published, *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d at 278, not prohibit unintelligible code from being used for advertising. The ordinary person standard better effectuates that purpose—as

[5] *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 486 (1st Cir. 2016) ("The statutory term 'personally identifiable information' is awkward and unclear.").

Plaintiff appears to accept. *See* ECF 1 ¶¶ 32, 34, 41 (alleging that ChatGPT allows an "ordinary person" to discern the information).

Likewise, though other courts in this District have allowed VPPA claims based on an alleged sharing of information through tracking technology to proceed, those cases were decided before *Solomon* and did not conclude that unintelligible code sent to Meta disclosed PII. *See, e.g.*, *Burdette v. FuboTV Inc.*, No. 23 C 10351, 2024 WL 2831466, at *4 (N.D. Ill. June 4, 2024) (while the "ordinary person" standard "reflect[s] the majority view," the "Identifiers (such as name, address, email address) ... demographic information (age); [and] location information" would "permit an ordinary person to identify a subscriber"). And while one out-of-District decision declined to follow *Solomon*, this Court is not bound by it and should not commit the same error. *Manza v. Pesi, Inc.*, No. 24-cv-690-jdp, 2025 WL 1445762, at *5 (W.D. Wis. May 20, 2025).[6]

Instead, this Court should follow the majority of Circuits that apply the common sense interpretation of PII as "information that would readily permit an ordinary person to identify a specific individual's video-watching behavior"—not unintelligible data that is "simply too far afield from the circumstances that motivated the Act's passage to trigger liability." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d at 290.

The Court should dismiss Plaintiff's VPPA claim with prejudice.

### C. In the Alternative, Plaintiff Must Provide a More Definite Statement Under Fed. R. Civ. P. 12(e).

Alternatively, assuming Plaintiff could adequately allege the disclosure of PII to the public—he cannot—the Court should require Plaintiff to provide a more definite statement.

Under Rule 12(e), a party can move for a more definite statement as to a pleading that "is

[6] *Manza* is also distinguishable because the plaintiff alleged that the defendant disclosed her name and address, in addition to various identifying IDs. *See id.* at *9.

so vague and ambiguous that the party cannot reasonably be required to frame a responsive pleading." *Herrera v. Rector*, No. 03 CV 6377, 2004 WL 2047562, at *3 (N.D. Ill. Sep. 13, 2004) (quoting Fed. R. Civ. P. 12(e)). Here, the Complaint does not allege sufficient information to allow Global Tetrahedron to discern whether this is the proper forum, whether it is a proper defendant, or whether Plaintiff watched videos on *The Onion*'s website at any relevant time.

First, *The Onion*'s Terms of Use contain an arbitration provision. RJN Ex. 4. While Plaintiff alleges that readers can "subscribe to The Onion by providing their email in the newsletter sign-up portion of the Website," he has not provided an email address. ECF 1 ¶ 23. Plaintiff's email address would enable Global Tetrahedron to demonstrate that it emailed Plaintiff the Terms of Use and that he assented to the arbitration provision; without it, Global Tetrahedron cannot reasonably respond to the Complaint. *See, e.g.*, *Convenient Indus. of Am., Inc. v. CFM Franchising Co*., No. 93 C 4028, 1993 WL 387363, at *3 (N.D. Ill. Sept. 24, 1993) (granting 12(e) motion "[g]iven the possible assertion of a defense of discharge in bankruptcy"). This is especially so since Global Tetrahedron has not been able to locate in its subscriber database any email address publicly associated with Plaintiff.

Second, Global Tetrahedron only acquired *The Onion* in April 2024. RJN Ex. 4. Plaintiff's vague allegations that he subscribed to *The Onion* "sometime in or around 2024" and watched videos "on various occasions," ECF 1 ¶ 6, do not allow Global Tetrahedron to determine whether it owned *The Onion* at any relevant time, or whether Plaintiff watched videos after his alleged subscription, as required. Global Tetrahedron, therefore, also cannot respond on this basis. *See, e.g.*, *Herrera*, 2004 WL 2047562, at *3 ("To allow defendant to sufficiently respond to the complaint, plaintiff should set forth the location and time of the event and facts as to how plaintiff was allegedly injured"); *Haynes v. Baldwin*, No. 3:20-CV-0086-GCS, 2020 WL 4582584, at *2

(S.D. Ill. Aug. 10, 2020) (granting a Rule 12(e) motion where the "allegations are not rooted to specific dates or time periods"); *Anderson v. Cornejo*, No. 97 C 7556, 1999 WL 35307, at *7 (N.D. Ill. Jan. 11, 1999) (ordering plaintiffs to file a statement listing the date of the alleged unlawful search); *Fischer Indus. Inc. v. Medivance_Instruments, Ltd.*, No. 89 C 9082, 1992 WL 686866, at *12 (N.D. Ill. Aug. 31, 1992) ("[i]f specific allegations of time and place are required or desirable but none are pleaded, courts generally will grant a motion for a more definite statement").

## III. CONCLUSION

For these reasons, Global Tetrahedron respectfully requests that this Court dismiss the Complaint without leave to amend. *See Hughes*, 2025 WL 1720295, at *2–3 (finding that "amendment would likely be futile," because "*Solomon* effectively shut the door for Pixel-based VPPA claims"). In the alternative, the Court should order Plaintiff to allege his email address, the date he subscribed to *The Onion*, and the dates he watched videos on *The Onion*'s website.

Dated: August 1, 2025

Respectfully submitted,

**GOODWIN PROCTER LLP**

By: */s/ Mark David McPherson*
MARK DAVID McPHERSON (admitted *pro hac vice*)
*MMcPherson@goodwinlaw.com*
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel.: +1 212 813 8800
Fax: +1 212 355 3333

REBECCA L. TARNEJA (admitted *pro hac vice*)
*RTarneja@goodwinlaw.com*
601 South Figueroa Street, Suite 4100
Los Angeles, California 90017
Tel.: +1 213 426 2500
Fax: +1 213 623 1673

Attorneys for Defendant
GLOBAL TETRAHEDRON LLC

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the clerk of the court for the United States District Court for the Northern District of Illinois by using the CM/ECF system on August 1, 2025. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system. I certify under penalty of perjury that the foregoing is true and correct.

Dated: August 1, 2025 *\/s/ Mark David McPherson*